UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PIERRE VASARHELYI, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 C 02440 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| MICHELE TABURNO VASARHELYI, | ) | |
| a/k/a MICHELE TABURNO, and | ) | |
| TKG STORAGEMART PARTNERS, LP, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION & ORDER

Plaintiff Pierre Vasarhelyi brings this lawsuit against his step-mother, Defendant Michele Taburno Vasarhelyi, alleging claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*., as well as various state law claims.[1] All of the claims arise from a dispute over some of the artwork created by the late Victor Vasarhelyi. Michele moves for summary judgment on all counts. R. 124. For reasons explained more fully below, Michele's motion is granted.

I.

In deciding this summary judgment motion, the Court views the evidence in the light most favorable to the non-movant, Pierre.[2] Pierre is the grandson of Victor Vasarhelyi, who was an internationally recognized artist. R. 126, Def.'s Stmt. of Material Facts (DSOF) ¶ 3. According to some, Victor was the inventor of the "optical

---

[1]The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

[2]To avoid confusion, the Court will refer to the parties and other members of the Vasarhelyi family by their first names.

art" style.[3] Here is an image of one of Victor's works, which sold at auction in November 2011 for $242,500:[4]



Victor had two sons—Andre and Jean-Pierre ("Yvaral") Vasarhelyi. *Id.* Yvaral, who is Pierre's father, was also a famous artist. *Id.* ¶ 1. In 1969, Yvaral married Michele, and Michele became Pierre's step-mother. *Id.* ¶¶ 1-3. After the marriage, Michele began working as an assistant for Victor and Yvaral. *Id.* ¶ 8. Michele acted as an agent for Victor and Yvaral's business activities as artists. *Id.* ¶ 13.

Victor and Yvaral passed away in 1997 and 2002, respectively. *Id.* ¶¶ 1, 3. Since then, there have been numerous disputes over who has rightful ownership of artwork created by Victor and Yvaral.[5] In 2004, Michele moved to the United States, and

---

[3]fondationvasarely.fr/uk/vasarely4.php (last visited Aug. 13, 2012).

[4]christies.com/LotFinder/lot_details.aspx?intObjectID=5498608 (last visited Aug. 13, 2012).

[5]Although not directly relevant to this case, it is worth noting that disputes over ownership of artwork created by Victor and Yvaral arose even before Victor's death. After Yvaral's mother died in 1990, Yvaral and his brother, Andre, participated in an arbitration proceeding against the Vasarely Foundation regarding artwork that their mother allegedly donated to the Foundation. DSOF ¶ 25. In 1995, Yvaral and Andre were awarded ownership of hundreds of paintings and thousands of prints and sculptures. *Id.* The Foundation appealed the arbitration award, and the appeal remains pending. *See* R. 142, Pl.'s Resp. DSOF ¶ 32.

brought a large collection of art that she claims to have received from Victor and Yvaral during the many years she was married to Yvaral and worked as Yvaral and Victor's assistant. *Id.* ¶ 19. Michele stores other pieces of art that were part of Yvaral's estate in an undisclosed location in France. R. 142, Pl.'s Stmt. of Facts (PSOF) ¶ 3.

As an heir to Victor and Yvaral's estates, Pierre claims that he has a beneficial interest in the artwork that Michele brought to the United States, as well as the artwork hidden in France. Pierre seeks to recover for injuries he suffered due to Michele's alleged unlawful possession and transport of the artwork.

## II.

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008).

## III.

Michele raises the threshold question of whether this Court's consideration of Pierre's claims is prohibited by the doctrines of claim preclusion or issue preclusion.

3

Michele contends that a judgment entered in an Illinois state-court proceeding bars Pierre from litigating the claims brought in this case.

In 2008, Michele sued Thomas Monahan, an art dealer, and TKG StorageMart[6] in the Circuit Court of Cook County, Illinois.[7] DSOF ¶ 20. Michele alleged that Monahan unlawfully prevented her from accessing her art collection, which was being stored in lockers at StorageMart under Monahan's name. *Id.*; R. 132-1, Def.'s Exh. M-1. In January 2012, the Circuit Court granted Michele's partial motion for summary judgment on the claim of replevin as to all of Michele's personal property stored in the StorageMart lockers, which included a large collection of art created by Victor and Yvaral. R. 165, Def.'s Stmt. of Additional Facts (DSOAF) ¶ 5. The Circuit Court held that Michele had established her right to "possess as owner" the art contained in the StorageMart lockers, and ordered the artwork to be returned to Michele. *Id.* ¶¶ 5-6.

The preclusive effect of a state court's judgment on a subsequent suit in federal court is determined by state law. *See* 28 U.S.C. § 1738; *Burke v. Johnston*, 452 F.3d 665, 669 (7th Cir. 2006). The parties agree that Illinois law applies. Under Illinois law, three requirements must be satisfied for claim preclusion to apply: "(1) a final judgment on the merits has been rendered by a court of competent jurisdiction; (2) an

---

[6]TKG StorageMart is also named as a defendant in this case. Pierre does not allege any misconduct on the part of StorageMart or specifically name StorageMart in any of the counts of the complaint. Pierre purportedly included StorageMart as a defendant because it owns the storage lockers in which Michele stored some of the artwork at issue in this case. *See* R. 1 (Compl.) ¶ 11.

[7]*Vasarhelyi v. Monahan et al.*, Case No. 08 CH 23672.

identity of cause of action exists; and (3) the parties or their privies are identical in both actions." *Hudson v. City of Chicago*, 889 N.E.2d 210, 213 (Ill. 2008).

Pierre argues that claim preclusion does not apply because the state-court proceeding did not involve the same parties (or their privies) as this case. R. 168 (Pl.'s Sur-reply) at 2. Pierre was not a party in the state-court case, though not for lack of trying. Pierre moved to intervene as an interested party in *Vasarhelyi v. Monahan*, but his motion was denied. DSOF ¶ 37. Michele argues, however, that Pierre was in privity with Monahan and is thus bound by the state-court judgment against Monahan. R. 164 (Def.'s Am. Reply) at 8-9. Michele points to an agreement that Pierre and Monahan entered into in September 2008—a few months after Michele filed the state-court action against Monahan. DSOAF ¶ 1. Pierre and Monahan's "common[-]interest agreement" states that "the parties share a mutuality of interest in connection with rejecting [Michele's] wrongful claim to ownership of the [art] in the [state-court case] 08-CH-23672, and in prosecuting Pierre and Andre Vasarhelyi's claims to ownership of the [art] belonging to them." R. 167, Def.'s Exh. BB. Monahan agreed to comply with all orders entered in the state-court case, share information with Pierre about the status of the case, and pay for all legal fees incurred by Monahan and Pierre in connection with litigation concerning the Vasarhelyi artwork. R. 167, Def.'s Exh. CC. In return, Monahan would receive 25% of the total value of any portion of artwork that Pierre recovered as a result of the legal proceedings. *Id.*

The question is whether this common-interest agreement puts Pierre in privity with Monahan so that Monahan's defeat in the state-court case binds Pierre. Under

5

Illinois principles of claim preclusion, "[a] nonparty may be bound pursuant to privity if his interests are so closely aligned to those of a party that the party is the 'virtual representative' of the nonparty." *City of Chicago v. St. John's United Church of Christ*, 935 N.E.2d 1158, 1168 (Ill. App. Ct. 2010) (quoting *City of Rockford v. Unit Six of the Policemen's Benevolent & Protective Ass'n*, 840 N.E.2d 1283, 1290 (Ill. App. Ct. 2005)). Generally, "[p]rivity is said to exist between parties who adequately represent the same legal interests." *People ex rel. Burris v. Progressive Land Developers, Inc.*, 602 N.E.2d 820, 825 (Ill. 1992) (internal quotations omitted). "[D]etermining privity requires careful consideration of the circumstances of each case." *Apollo Real Estate Inv. Fund, IV, L.P. v. Gelber*, 935 N.E.2d 963, 973 (Ill. App. Ct. 2010).

Although Pierre could have potentially benefitted from Monahan's success in the state-court proceeding (if Monahan had won) and Pierre agreed to "cooperate" with Monahan's efforts to defeat Michele's claims, Pierre was not in privity with Monahan for purposes of claim preclusion. "With respect to the doctrine of res judicata [claim preclusion], there is no generally prevailing definition of 'privity' which can automatically be applied to all cases." *Atherton v. Conn. Gen. Life Ins. Co.*, 955 N.E.2d 656, 659 (Ill. App. Ct. 2011). Illinois courts have turned to the Restatement (Second) of Judgments for guidance. *See, e.g., State Farm Fire & Cas. Co. v. John J. Rickhoff Sheet Metal Co.*, 914 N.E.2d 577, 559 (Ill. App. Ct. 2009); *Atherton*, 955 N.E.2d at 660 (Rochford, J., concurring); *Diversified Fin. Sys., Inc. v. Boyd*, 678 N.E.2d 308, 311 (Ill. App. Ct. 1997).

6

The Restatement explains that "'privity' refers to a cluster of relationships, under which the preclusive effects of a judgment extend beyond a party to the original action and apply to persons having specified relationships to that party." *State Farm Fire & Cas.*, 914 N.E.2d at 589 (quoting Restatement (Second) of Judgments, Introduction, at 1 (1982)). The relationship between Pierre and Monahan does not fall into any of the three general categories of relationships that may establish privity as set forth in the Restatement: (1) relationships that are "explicitly representative" (*e.g.*, trustee, class representative designated by a court); (2) "substantive legal relationships" (*e.g.*, co-obligors, bailees and bailors, co-owners of property); and (3) successors in interest to property. *Id.* (quoting Restatement (Second) of Judgments §§ 41, 75).

Moreover, Illinois law emphasizes that, in order to be considered in privity, parties must "adequately represent the same legal interests." *Doe v. Gleicher*, 911 N.E.2d 532, 541 (Ill. App. Ct. 2009); *Yorulmazoglu v. Lake Forest Hosp.*, 834 N.E.2d 468, 472-73 (Ill. App. Ct. 2005); *Progressive Land Developers*, 602 N.E.2d at 879-80. Michele fails to establish that Monahan adequately represented Pierre's legal interests in the state court proceedings. To be sure, the fee-and-reward arrangement outlined in Pierre and Monahan's "common[-]interest agreement" demonstrates that Monahan had an *incentive* (the 25% reward) to defeat Michele's replevin claim in state court. But that does not necessarily mean that Monahan "is so identified in interest with [Pierre] that he represents the *same legal right*." *Jackson v. Callan Pub., Inc.*, 826 N.E.2d 413, 428 (Ill. App. Ct. 2005) (emphasis added).

7

The cases cited in Michele's brief are distinguishable. *In re Heartland Food and Dairy Distributors* held that Land-O-Sun Dairies, L.L.C. was bound by the dismissal of a case filed by one of its corporate members. 253 B.R. 32, 36 (S.D. Ill. 2000). Land-O-Sun Dairies, L.L.C. decided to sue Heartland Food and Dairy Distributors in Illinois state court, but its attorney mistakenly named Land-O-Sun Dairies, *Inc.* as the plaintiff in the complaint. *Id.* at 32. Land-O-Sun Dairies, Inc. was a member of Land-O-Sun Dairies, L.L.C. and retained an ownership interest in the L.L.C. *Id.* at 34. The state-court judge granted Heartland's motion to dismiss the complaint based on Land-O-Sun Dairies, Inc.'s legal incapacity to sue in Illinois. *Id.* at 35. Land-O-Sun Dairies, L.L.C. filed a new complaint against Heartland in state court—this time properly naming the L.L.C. as the plaintiff. *Id.* at 35. The case was removed to federal bankruptcy court, and the bankruptcy judge held that the L.L.C.'s case was barred under the doctrine of res judicata (claim preclusion). *Id.* at 36. Although Land-O-Sun Dairies, Inc. was the nominal plaintiff in the first lawsuit, the court held that Land-O-Sun Dairies, L.L.C. was "the real party in interest" and in privity with Land-O-Sun Dairies, Inc. *Id.* The L.L.C. was responsible for retaining counsel to prosecute the first action, and the record showed that counsel "was representing L.L.C.'s interests during these initial proceedings." *Id.* The court concluded that the earlier dismissal bound the L.L.C. "since its interests were represented in the first lawsuit and it had ample opportunity in that forum, albeit wasted, to raise its concerns with respect to the dismissal." *Id.* at 39.

8

The same cannot be said for Pierre. Unlike the nominal plaintiff in *In re Heartland Food and Dairy Distributors*, Monahan was not "serving as a proxy" for Pierre in the state court proceeding. *See id.* at 36. The record does not show that Pierre had any role in the state court litigation. Michele argues that Pierre and Monahan's agreement to work cooperatively and "develop a common strategy" with regard to the state-court case and other litigation related to the art demonstrates that the parties are in privity. Def.'s Am. Reply at 9. But Pierre and Monahan's agreement expressly states that Pierre was *not* in a position to control the state court litigation. Under the parties' contract, Pierre agreed that "notwithstanding [his] claimed right to the [stored art], [he] shall not be entitled to direct the course, direction or strategy to be determined and implemented by Monahan in the Chicago Case 08CH23672 or any other matter in which Monahan and Pierre Vasarhelyi, Andre Vasarhelyi and/or Taburno is/are party(ies)." Def.'s Exh. CC ¶ 3(b). This lack of control distinguishes *In re Heartland*.

*Agolf, LLC v. Village of Arlington Heights*, 946 N.E.2d 1123 (Ill. App. Ct. 2011), is similarly distinguishable. Agolf owned a shopping center in Arlington Heights, Illinois, and leased commercial space within the center to Capital Fitness. 946 N.E.2d at 1125-26. When Arlington Heights announced its plans to redevelop the property on which the shopping center was located, Capital Fitness and Agolf filed separate lawsuits against Arlington Heights, challenging the municipality's plan. *Id.* at 1127. *Agolf* held that the resolution of Capital Fitness's lawsuit (which was filed and decided first) precluded Agolf from pursuing its claims against Arlington Heights. *Id.* at 1134-

9

35. Agolf argued that res judicata did not apply because it was not a party to the Capital Fitness litigation, and Agolf (the owner/landlord) was not in privity with Capital Fitness (the tenant). *Id.* at 1131-32.

The appellate court rejected Agolf's argument for two main reasons. First, as a long-term tenant, Capital One adequately represented the "exact same" legal interest that Agolf sought in its lawsuit against Arlington Heights, and "was fighting for an interest so similar that it can be said to have been so closely aligned to [Agolf's] so as to be in privity." *Id.* at 1133. Second, Capital Fitness shared a mutual relationship in property rights with Agolf, the shopping center landlord. *Id.* at 1134. "This mutual relationship in property rights which Capital Fitness and [Agolf] share, then, clearly demonstrates a legal interest that is so closely aligned that it amounts to privity between them." *Id.* at 1134 (citing *Bd. of Educ. of Sunset Ridge Sch. Dist. No. 29 v. Village of Northbrook*, 692 N.E.2d 1278, 1284-85 (Ill. App. Ct. 1998) (privity of parties existed because property owner and lessee shared a mutual relationship to the same property rights considered in lessee's suit against defendant), and *St. John's United Church of Christ*, 935 N.E.2d at 1168-69 (privity existed between church and its parishioner in prior suit on the one hand, and intervenors in subsequent suit on the other, as all shared mutual relationship in property rights in the graves of ancestors buried in cemetery)).

But here Monahan's interest in defending against Michele's claims in state court is not identical to the legal interest Pierre now pursues. Pierre and Monahan do not share a mutual relationship to the same property rights. Pierre claims that as an heir

to Victor and Yvaral's estates, he has a beneficial interest in Michele's art collection. Monahan does not share this property interest. The fact that Pierre agreed to compensate Monahan with pieces of art in the event that Pierre obtains possession of the art collection some time down the road is very different from the shared property interests at issue in *Agolf*, *Sunset Ridge*, and *St. John's United Church of Christ.*

Even if Pierre was in privity with Monahan, claim preclusion still does not apply to bar Pierre's federal case. The second element of claim preclusion requires "an identity of cause of action." *Hudson*, 889 N.E.2d at 213. Illinois has adopted the "transactional test" in determining whether an identity of cause of action exists for the purposes of claim preclusion. *See River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893 (Ill. 1998). "Pursuant to the transactional test, separate claims will be considered the same cause of action for purposes of res judicata if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Nelson v. Chicago Park Dist.*, 945 N.E.2d 634, 644-45 (Ill. App. Ct. 2011) (quoting *River Park*, 703 N.E.2d at 893).

As Pierre points out, the state-court dispute involves a different "group of operative facts." *See* Pl.'s Sur-reply at 2. Michele sued Monahan in state court after their business relationship soured and Monahan wrongfully took possession of Michele's art collection. *See* R. 132-1, Def.'s Exh. M. Michele demanded that Monahan return the art and, when he refused, she filed an action for replevin. The primary purpose of Illinois' replevin statute "is to test the right of possession of personal property and place the successful party in possession of the property." *Carroll v. Curry*,

11

912 N.E.2d 272, 274-75 (Ill. App. Ct. 2009). The state court determined that Michele had a greater possessory right to the artwork, and ordered Monahan to return the art to Michele. In contrast, the facts giving rise to the instant case specifically relate to Pierre's alleged interest in the artwork, and whether Michele is unlawfully keeping the artwork from Pierre. Because the replevin claim decided in state court does not arise out of the same core of operative facts, there is not an identity of causes of action for purposes of claim preclusion.[8]

Nor does issue preclusion prevent Pierre from litigating certain issues in this case. "[U]nder collateral estoppel [issue preclusion], the adjudication of a fact or issue in one cause bars relitigation of the same fact or issue in a subsequent suit." *State Farm Fire & Cas.*, 914 N.E.2d at 588. Issue preclusion applies when: "(1) the issue previously adjudicated is identical to the question presented in the subsequent action; (2) a final judgment on the merits exists in the prior case; and (3) the party against whom estoppel is directed was a party to the prior litigation or is in privity with such a party." *Id.*

As already discussed with regard to claim preclusion, Pierre was not a party to the state court litigation, nor is he in privity with Monahan. *See supra* at 5-10. The doctrine of issue preclusion does not apply for the same reason. *See State Farm Fire &*

---

[8]Because all three elements of the doctrine must be satisfied before claim preclusion can be applied to bar a subsequent action, the Court need not consider the remaining element. *See Nowak v. St. Rita High School*, 757 N.E.2d 471, 477 (Ill. 2001) (in order to apply claim preclusion all three elements must be satisfied). In any event, Pierre does not dispute that the state court's grant of summary judgment to Monahan was a final and appealable order.

*Cas.*, 914 N.E.2d at 588 (privity analysis is the same under either doctrine). Pierre's claims in this case are not barred by the replevin judgment in state court.

Alternatively, Michele argues that Pierre is precluded from bringing the instant case because the state court has already ruled that Pierre does not have a property interest in the artwork that Michele brought to the United States. Specifically, Michele contends that the state court's denial of Pierre's motion to intervene represented a ruling that Pierre has no property interest in the artwork, thus precluding him from litigating the issue in this case. Def.'s Br. at 14-15. Not so. First, it is not clear whether the denial of a petition to intervene is even a final and appealable order in Illinois, a necessary threshold for triggering issue preclusion. *See N. Trust Co. v. Halas*, 629 N.E.2d 158, 165-66 (Ill. App. Ct. 1993) (denial of petition to intervene is not immediately appealable, thus, petitioners could not have appealed from the order prior to the conclusion of the entire action); *see also Wasilevich Constr. Co. v. LaSalle Nat'l Bank*, 584 N.E.2d 499, 502 (Ill. App. Ct. 1991) (noting split of authority on whether the denial of a petition to intervene is a final and appealable order under Illinois Supreme Court Rule 301, or rather such denial falls within the ambit of Rule 304(a), which requires an express written finding that "there is no just reason for delaying enforcement or appeal"); *Vill. of Long Grove v. Austin Bank of Chicago*, 600 N.E.2d 520, 522 (Ill. App. Ct. 1992) (order denying intervention not a final and appealable order; it is similar to other types of orders that are "nonfinal" under Rule 304(a)).

A judgment is "final" when it "terminates the litigation between the parties on the merits of the cause." *Cribbin v. City of Chicago*, 893 N.E.2d 1016, 1024 (Ill. App.

Ct. 2008) (quotation omitted); *see also Long v. Elborno*, 922 N.E.2d 555, 562-63 (Ill. App. Ct. 2010) (order that disposed of all matters and contained Rule 304(a) language was a "final judgment on the merits" for purposes of collateral estoppel). Also, "[f]inality, for purposes of the application of collateral estoppel, requires that the potential for appellate review must have been exhausted." *Werderman v. Liberty Ventures, LLC*, 857 N.E.2d 320, 326 (Ill. App. Ct. 2006) (quotation omitted). If the final judgment does not dispose of all pending issues and parties, the party cannot appeal the judgment unless the trial court makes a special finding under Illinois Supreme Court Rule 304(a) that there is no just reason for delaying enforcement or appeal of the adjudicated portion of the controversy.[9] *Id.* Orders that are not subject to an immediate appeal can be revised at any time before the entry of a judgment adjudicating all the claims of all the parties. Illinois S. Ct. Rule 304(a). Michele likens the state court's denial of intervention to an involuntary dismissal. *See* Def.'s Br. at 15. But this is incorrect because Pierre was never a party to the state court proceeding.

Even if the state court's order denying Pierre's motion to intervene is "final" for purposes of issue preclusion, another requirement for issue preclusion is not met because the issue previously adjudicated is not identical to the question presented here. In deciding Pierre's motion to intervene, the state court considered whether intervention was warranted under the Illinois rules of civil procedure, *see* 735 ILCS

---

[9]Subsection (b) of Illinois Supreme Court Rule 304 lists various exceptions to subsection (a)'s requirement, none of which apply here. *See* Illinois S. Ct. Rule 304(b).

5/2-408.[10] The state court determined that Pierre failed to establish a sufficient interest to intervene in the dispute between Michele and Monahan; a ruling for one or the other would not necessarily have extinguished Pierre's property interest in the artwork, so the state court was not ruling, by merely denying Pierre's request to intervene, that Pierre had no interest in the artwork. The issue of Pierre's intervention in the state court proceeding is different from the issues presented here. In this case, Pierre seeks to recover for injuries caused by Michele's allegedly wrongful transportation and possession of artwork that Pierre claims should be accounted for and shared pursuant to Victor's will.

Moreover, the state court dispute only related to the artwork that Michele brought to the United States and stored in Monahan's lockers at StorageMart. It did not involve the artwork that remains hidden in France. Here, Pierre contends that his beneficial interest is not limited to the Vasarhelyi artwork in the United States, but extends to other artwork, including the art that Michele is secretly storing in France. Compl. at 10 (requesting the return of all art works belonging to Pierre, whether stored in storage lockers, condominium units, or in Michele's possession or control in other

---

[10]This statute provides that an applicant's motion to intervene must be granted: "(1) when a statute confers an unconditional right to intervene; or (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody or subject to the control or disposition of the court or a court officer." 735 ILCS 5/2-408(a). The state court also has discretion to permit intervention when a statute confers a conditional right to intervene or when an applicant's claim and the main action concern a common question of law or fact. 735 ILCS 5/2-408(b).

locations); Def.'s Br. at 4 (arguing that Pierre enjoys "a beneficial interest in the artwork that [Michele] and her coconspirator have shipped and hidden").

Accordingly, Pierre's claims are not barred by the doctrines of claim preclusion or issue preclusion.

## IV.

Now the Court must decide whether Pierre has identified any admissible evidence in the summary judgment record that creates a genuine issue of material fact as to any of his nine claims. Michele contends that Pierre fails to put forth any such evidence and, as a result, her motion for summary judgment must be granted. The Court agrees.

All of Pierre's claims hinge on whether he has a legal or beneficial interest in the artwork that is the subject of this case. For instance, Pierre alleges three violations of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, (Counts 1 to 3). The civil RICO statute provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ." 18 U.S.C. § 1964(c). Here, Pierre claims that Michele violated §§ 1962(c) and (d). Section 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." Section 1962(d) makes it

unlawful for any person to conspire to violate any of the provisions of subsection (c). "Racketeering activity" includes acts indictable under 18 U.S.C. §§ 2314 and 2315, which prohibit the transportation, possession, and sale of stolen property in interstate or foreign commerce. *See* § 1961(1). Pierre claims that Michele violated § 1962 when she stole, and conspired to steal, the Vasarhelyi artwork and transported and sold the art in interstate and foreign commerce.

Michele argues that Pierre's RICO claims fail because Pierre has not offered any evidence that the allegedly stolen artwork belongs to him. Def.'s Br. at 6. RICO defines "person," for purposes of suing under § 1964(c), as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). In his response brief, Pierre concedes that he is *not* "entitled to immediate possession of the artwork in question, but rather, that he is entitled to redress for Defendant's intentional, injurious conduct resulting in damage to his *beneficial interests* in the estates of Victor Vasarhelyi and Yvaral." Pl.'s Br. at 5 n.2 (emphasis added). But Pierre does not set forth any evidence to suggest that he has a beneficial interest in the art that Michele possesses. By now, summary judgment is well-known as the "put up or shut up" moment in a lawsuit, when the nonmoving party must present evidence sufficient to convince a reasonable jury. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Pierre offers no evidence, other than a document that generally identifies him as Victor's heir (remember that Victor passed away over a decade ago), from which a reasonable jury might find that Pierre indeed has a beneficial interest in the particular artwork that Michele possesses and claims to own.

17

Michele states that some of the artwork in her collection was part of the arbitration award in the early 1990s, *see supra* at 2 n.3. After the Vasarely Foundation was ordered to turn over thousands of pieces of art to Andre and Yvaral Vasarhelyi, Michele claims that Andre and Yvaral, in turn, gave some of the art to Michele as payment for her financial support and work for the Vasarhelyi Family. DSOF ¶¶ 24-26. Pierre contends that there is a genuine dispute over whether he has a beneficial interest in the arbitration artwork because the Foundation's appeal of the award is currently pending before an appellate court in France. Pl.'s Resp. DSOF ¶ 30. Thus, Pierre seems to argue that a potential future beneficial interest in property is enough to qualify him as a "person" with the right to sue under §§ 1964(c) and 1961(3).

As broad as RICO is, the sole RICO case cited in Pierre's brief does not address the issue of a potential future beneficial interest. *Illinois Department of Revenue v. Phillips*, 771 F.2d 312, 317 (7th Cir. 1985) held that a state governmental unit could use civil RICO to pursue state tax collection claims, and reversed the district court's dismissal of the Department's complaint. *Phillips* considered the breadth of the RICO statute, and concluded that "it is not for the judiciary to eliminate the private action in situations where Congress has provided it." *Id.* at 317 (quotation omitted). *Phillips* does not support Pierre's argument that RICO applies to a person who claims a beneficial interest based on the notion that he *might* stand to inherit property in the future *if* an appeal reverses a prior finding and *if* that reversal then results in Pierre being able to assert rights to the artwork. And the Court is unaware of any case law

calling for such an interpretation. Accordingly, Michele's motion for summary judgment as to the RICO claims (Counts 1 to 3) is granted.

Pierre's state law claims of conversion and replevin do not survive summary judgment because Pierre fails to offer any evidence (he does not even address these claims) that he has a legal right to the artwork. "Conversion is the improper deprivation of one who has a right to the immediate possession of the object unlawfully held." *Karimi v. 401 N. Wabash Venture, LLC*, 952 N.E.2d 1278, 1285 (Ill. App. Ct. 2011) (quotation omitted). Similarly, Illinois' replevin statute provides that "[w]henever any goods or chattels have been wrongfully distrained, or otherwise wrongfully taken or are wrongfully detained, an action of replevin may be brought for the recovery of such goods or chattels, by the owner or person entitled to their possession." 735 ILCS 5/19-101. As noted above, Pierre's response brief does not even discuss these replevin claims. Because Pierre does not present evidence sufficient to raise a question of fact as to whether he is entitled to possession of the artwork, the Court grants Michele's motion for summary judgment on the conversion and replevin claims (Counts 4 and 5).

In Count 6, Pierre alleges that Michele was the executrix of Victor Vasarhelyi's estate and thus Michele owed Pierre—the heir of Victor's estate—fiduciary duties. Compl. ¶ 68. To prevail on a claim for breach of fiduciary duty, Pierre must prove the existence of a fiduciary duty, that Michele breached the duty, and that Pierre suffered damages proximately caused by that breach. *See Bernstein & Grazian, P.C. v. Grazian & Volpe, P.C.*, 931 N.E.2d 810, 823 (Ill. App. Ct. 2010). Michele argues that summary

19

judgment is proper on this claim because there is no evidence that Michele owed a fiduciary duty to Pierre. Again, Pierre fails to respond to Michele's argument in his opposition brief.

In his Local Rule 56.1 statement of facts, Pierre does state that Michele "claim[ed] to act as executrix of the estate of [Victor] Vasarhelyi" and disputed Victor's will. PSOF ¶ 2. Pierre sued Michele and Andre to enforce Victor's will, and the French tribunal found in Pierre's favor. *Id.* The tribunal's decision states that Michele was "acting as executrix and co-heir of [Yvaral] Vasarhelyi, who died on August 2, 2002," but it does *not* mention anything about Michele acting as the executrix of *Victor's* estate. *See* R. 149, Def.'s Resp. PSOF ¶ 2. So Pierre's statement of facts relies on evidence that does not in fact support the proposition that Michele acted as executrix of Victor's estate. And, as noted above, he does not otherwise explain in his response brief why Michele owes him a fiduciary duty. Based on the actual evidence in the record, the Court concludes that a reasonable jury could not find that Michele breached a fiduciary duty. Michele's motion for summary judgment on Count 6 is granted.

Michele argues that summary judgment must also be granted on Pierre's fraud claim (Count 7). To prove fraud in Illinois, a plaintiff must establish five elements: "(1) a false statement of material fact; (2) the defendant knew the statement was false; (3) the defendant intended that the statement induce the plaintiff to act; (4) the plaintiff relied upon the truth of the statement; and (5) the plaintiff suffered damages from his reliance on the statement." *Aasonn, LLC v. Delaney*, 961 N.E.2d 939, 951 (Ill. App. Ct. 2011). Pierre argues that Michele committed fraud when she shipped and hid artwork

that she was obligated to hand over for accounting to the French administration. Pl.'s Br. at 6. Pierre also claims that Michele fraudulently misrepresents herself as the owner of the artwork to potential buyers, dealers, and collectors. *Id.*

But Pierre fails to show that *he* was fraudulently induced by Michele's alleged misrepresentations. In evaluating fraud claims, Illinois courts hold that, in order to state a claim, the defendant's false statement must have been made "for the purpose of inducing *the plaintiff* to act." *Janowiak v. Tiesi*, 932 N.E.2d 569, 579 (Ill. App. Ct. 2010) (emphasis added). Pierre does not offer any evidence showing that Michele made a false statement to him, or that he justifiably relied on a false statement. At bottom, he is trying to advance fraud claims on behalf of others whom Michele has purportedly defrauded. This he cannot do. Michele's motion for summary judgment on Count 7 is granted.

The remaining claims for constructive trust (Count 8) and demand for accounting (Count 9) are not addressed in the parties' briefs. But it is clear that those claims (which are more in the nature of remedies) cannot advance for the same reasons as the fiduciary-duty claim cannot stand. "A constructive trust is an equitable remedy that will be imposed on proceeds of a breach of fiduciary duty." *Pekin Ins. Co. v. Precision Dose, Inc.*, 968 N.E.2d 664, 682 (Ill. App. Ct. 2012); *Fitch v. McDermott, Will & Emery, LLP*, 929 N.E.2d 1167, 1179 (Ill. App. Ct. 2010) (imposition of a constructive trust is a remedy, not a cause of action). Similarly, to demand an accounting, a plaintiff must establish the existence of a fiduciary relationship between him and the person required to account. *See Newton v. Aitken*, 633 N.E.2d 213, 218 (Ill. App. Ct. 1994).

21

Based on the Court's decision to grant Michele's motion for summary judgment in its entirety, and in particular the fiduciary-duty claim, it follows that Pierre's requests for a constructive trust and an accounting are denied.

## V.

For the reasons stated above, Michele's motion for summary judgment [R. 124] is granted. As a formal matter, one of Michele's counter-claims (the first one) appears to still be in the case. R. 21 at 47; R. 57 (dismissing the two other counter-claims). In that counter-claim, Michele seeks a judgment declaring that Pierre does not have any possessory or ownership interest in what she labels the "Bailed Art Pieces" and the "Michele Art Collection." R. 21 at 51-52. Michele's summary-judgment motion did not address the counter-claim, perhaps because she seeks only to terminate Pierre's claims and end this litigation. In order for Michele to win summary-judgment (or any judgment) on the declaratory-judgment claim, she likely would be required to make a much broader presentation than that required to fend off Pierre's claims. For example, she would have to specifically identify the pieces that comprise the "Bailed Art Pieces" and the "Michele Art Collection," apprise the Court on any other litigation that impacts the counter-claim, R. 21 at 51, ¶ 28 (referring to French litigation over the artwork), and actually file a motion on the counter-claim, accompanied by sufficient evidence (again viewed in the light most favorable to Pierre). On or before August 20, 2012, the parties shall confer with one another as to the status of the counter-claim, and file a

22

concise joint position statement on or before that date. If Michele seeks to voluntarily dismiss the counter-claim, that request should be stated in the position statement.

ENTERED:

_____
Honorable Edmond E. Chang

DATE: August 13, 2012